UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Robert A. Morgan,

Plaintiff,

v.

**MEMORANDUM AND ORDER**
Civ. File No. 01-1796 (MJD/SRN)

UNUM Life Insurance Company of America,

Defendant,

---

Denise Yegge Tataryn; Mansfield, Tanick & Cohen, P.A., for and on behalf of Plaintiff.

John Harper III, Terrance J. Wagener, Krass Monroe P.A., for and on behalf of Defendant.

---

For the reasons that follow, Plaintiff's Motion is Granted, Defendant's Motion is Denied.

**BACKGROUND**

Plaintiff Robert A. Morgan was an employee of Honeywell Corporation in the position of Senior Principal Research Scientist. His employment duties centered on managing, proposing and leading complex research and development projects. He also played a role in transferring new technology to business units and drafted proposals and authored patents and scientific publications. Morgan has a Ph. D. in Optical Science and had an extensive career in research, having earned eight patents and written over 140 publications.

FILED 9-17-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 9-17-02
DEPUTY CLERK

Morgan began his employment at Honeywell in April 1994. By March 1999, he was completely disabled and unable to continue in his employment due to his medical conditions of fibromyalgia[1] and primary insomnia. For several years prior, Morgan experienced and was treated for a range of sleep disorders. In 1995, Morgan began to experience fatigue and cognitive difficulties. By 1997, Morgan was also experiencing nausea and severe pain in his neck, back and spine and was diagnosed with fibromyalgia[2].

As a result of his medical conditions, Morgan's physician ordered him to take a short-term disability leave of absence beginning on May 23, 1997. In August 1997, Morgan returned to work part-time and advanced to full-time by December 1997. However, Morgan's symptoms became worse and in May 1998, his employer reduced his responsibilities to the level of Principal Research Scientist. In February 1999, Morgan's physician reduced his workload to two days a week. By March 1999, his physician ordered him to stop work completely.

Morgan applied and was approved for long-term disability benefits from UNUM with payments beginning September 6, 1999. UNUM ceased making benefits payments on August 21, 2000 and notified Morgan by letter dated August 22, 2000 that benefits would be discontinued. UNUM based its decision to discontinue benefits on video

[1]"People with fibromyalgia have generalized pain, achiness, and stiffness all over their bodies. The diffuse pain may be referred from various tender points in the body. The tender points are very painful, but people with fibromyalgia may not even realize these particular areas hurt until pressure is applied to them. The other main characteristic of fibromyalgia is chronic fatigue, probably related to disturbed sleep patterns. Sufferers often complain of waking up as tired as they were when they went to sleep having continued fatigue throughout the day." Simeon Margolis, M.D., Ph.D. & John A. Flynn, M.D., The Johns Hopkins White Papers 89 (1995).

[2] Dr. Yue, Morgan's treating physician, diagnosed his condition as follows: "Fibromyalgia with pain, muscle spasm and fatigue of greater than three months duration, 18 of 18 tender points being positive, headache, CNS disturbance of sleep disturbance, cognitive dysfunction and affective dysfunction, spastic colon, dysautonomia, and restless leg." (Bates Stamp UACL 00645).

surveillance it conducted of Morgan stretching and exercising at a fitness center and performing multiple tasks around his home such as taking out the garbage and talking on the phone while sorting papers. UNUM concluded that Morgan's activities were inconsistent with his reported restrictions and limitations and were incompatible with his medical condition of fibromyalgia.

Subsequently, Morgan filed an administrative appeal of UNUM's denial by letter dated November 17, 2000 and included evidence in the form of medical records, statements from persons with knowledge of his medical conditions, and medical literature in support of his appeal. After a series of assessments by UNUM and Morgan's neuropsychologists, on September 12, 2001 UNUM upheld its decision and informed Morgan that he had exhausted his administrative remedies.

Morgan filed this claim pursuant to the Employee Retirement Income Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. He seeks relief in the form of past due monthly payments under the UNUM LTD Plan; reinstatement into the Plan; ordering of UNUM to pay him long-term disability benefits under the Plan, plus accrued interest; costs, disbursements and other litigation expenses, including attorneys fees per 29 U.S.C. §132(g), ERISA§502(g), and any additional relief as the Court deems just and proper. Both parties move for summary judgment.

**DISCUSSION**

*Standard for Summary Judgment*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage &

Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). To determine whether genuine issues of material fact exist, the court determines materiality from the substantive law governing the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. Id. A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. Id. at 248-249.

*Standard of Review*

A denial of benefits challenged under ERISA Section 1132(a)(1)(B) should be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Where a plan gives the administrator "discretionary authority to determine eligibility for benefits," the court reviews the administrator's decision for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under the abuse of discretion standard, the court must determine whether a reasonable person could have reached the same decision. See House v. The Paul Revere Life Ins. Co., 241 F.3d 1045 (8th Cir. 2001); Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1007 (8th Cir. 1996). The inquiry focuses on the presence or absence of substantial evidence supporting the administrator's decision. See Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998). While the administrator's decision need not be supported by a preponderance of the evidence, there must be "more than a scintilla." Id.

The parties do not contest that UNUM's plan ("the Plan") includes discretionary language. However, Morgan argues in favor of a less deferential "sliding scale" standard of review as adopted by the Eighth Circuit in Woo. In Woo, the court used a two-part prerequisite test to determine whether a party is due a less deferential standard of review in an ERISA benefits claim where the Plan includes discretionary language. In order to satisfy the test, the plaintiff must show, "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo, 144 F.3d at 1160. The second prong of the two-part requirement is met by showing that the conflict or irregularity has a connection to the "substantive decision reached." See Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 588-589 (8th Cir. 1999). Under Woo, if the court finds that these two prongs are satisfied, it then applies a less deferential "abuse of discretion" standard of review.

Here, Morgan argues that a palpable conflict of interest exists because the Plan's insurer and its administrator are the same entity. He claims that this inherently creates a conflict of interest because UNUM stands to gain financially from denying a claim for benefits. The courts have not been persuaded by these facts alone, however. The fact that a plan administrator and plan insurer are the same creates a "rebuttable presumption" of a conflict rather than "a palpable conflict of interest" Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944. 948-49 (8th Cir. 2000) (citing Barnhart, 179, F.3d at 587-88). In fact, "indicia of bias can be negated by ameliorating circumstances, such as equally compelling long-term business concerns that militate against improperly denying benefits despite the dual role." Id. at 948. The Eighth Circuit has recognized that any incentive to

obtain a short-term benefit by denying claims is outweighed by the long-term effect on the insurer if it routinely denied claims. Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998). However, in this case as in Woo, UNUM's status as both the insurer and the administrator is combined with the fact that it sought no independent medical review of Morgan's alleged medical condition. Rather, it relied on video surveillance and UNUM's on-site physician's analysis of the video surveillance to conclude that Morgan did not suffer from debilitating fibromyalgia and primary insomnia as diagnosed by Morgan's physicians. These combined facts lead the Court to conclude that Morgan has shown the requisite connection between UNUM's conflict of interest and the subsequent denial of benefits to warrant a less deferential standard of review.

In addition, Morgan argues that UNUM's failure to address the medical evidence supplied by his treating physicians constitutes a procedural irregularity. In Woo, the Eighth Circuit determined that a procedural irregularity existed where the plan administrator did not obtain the opinion of a specialist when confronted with an uncommon disease and only used the opinion of an in-house consultant to contradict the entire record and the opinions of two treating physicians. See Woo, 144. F.3d at 1161. Likewise, in this case, UNUM consulted only one on-site physician and an on-site neuropsychologist to contradict the opinions of Morgan's three treating physicians, Dr. Yue, a primary pain specialist with experience in fibromyalgia treatment, Dr. Tiede, an internist, and Dr. Scharf, a sleep specialist who treated Morgan's primary insomnia.

Further, UNUM's experts did not directly address Morgan's alleged disability: primary insomnia and fibromyalgia. UNUM's sole outside expert opinion is from a

psychologist[3] rather than a physician. Likewise, UNUM's on-site doctors almost exclusively commented on UNUM's neuropsychological condition, rather than the physical diagnosis given by Morgan's treating physicians. Morgan's disability claim has a strong cognitive component. However, as his treating physicians attest, the cognitive condition is the result of his inter-related physical conditions of fibromyalgia and insomnia rather than any "organic" psychological problems. As Dr. Yue stated:

> I have recently seen and treated Robert Morgan, and I continue to have the same opinion as I've had for some time—that Mr. Morgan's multiple medical problems prevent him from performing his occupation as senior principal research scientist. It is primarily his cognitive dysfunction *caused* by the fibromyalgia that disables him from his work. [4]

(Bates Stamp UACL 00602) (emphasis added).

Moreover, had UNUM been dissatisfied with the medical evidence submitted by Morgan's physicians, it could have submitted him to an independent medical examination. Had it done so, it could have relied on any resulting contrary opinion of an independent examiner. See House v. The Paul Revere Life Ins. Co., 241 F.3d at 1048; Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996). Therefore, this Court concludes that UNUM's failure to address the main physical component of Morgan's disability

---

[3] Morgan retained Dr. Selin for advice on dealing with " a chronic, degenerative and increasingly disabling disease; to be able to sleep throughout the night; and, decrease pain, exhaustion, nausea and sick symptoms." (Bates Stamp UACL00165). After a difficult doctor-patient relationship, Morgan ceased meeting with Dr. Selin. Defendant uses Dr. Selin's post-treatment allegations that Morgan wanted to go on disability so he could move to Wisconsin and misused his medication as evidence that Morgan is not disabled. However, Dr. Selin's opinion is contradicted by her session notes, Morgan's discussions with her regarding his fear of losing his career (See, e.g., Bates Stamp UACL 00171, 00175, 00189), and is not supported by Morgan's treating physicians.

[4] Dr. Tiede similarly stated in a letter dated October 30, 2000:

> I have been Mr. Morgan's primary physician since December 1995, and given the multiple evaluations he's had by multiple sleep specialists including multiple sleep studies including the Mayo Clinic and their evaluations, there is no doubt in my mind that this man is unfortunately quite disabled by his combination of primary insomnia and associated fibromyalgia. His sleep disorder has clearly affected his cognitive abilities, specifically in his ability to concentrate and work for prolonged periods of time.
> (Bates Stamp 00602).

claim before denying benefits resulted in a denial "reached without reflection and judgment" and therefore is deserving of a less deferential standard of review. Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996).

Under these facts, it is appropriate to review UNUM's denial of benefits under a "sliding scale" standard as established in the U.S. Supreme Court's decision in Firestone and as applied by the Eighth Circuit in Woo. This standard is flexible in that it permits the court to adjust its analysis according to the circumstances at hand. See Chambers v. Family Health Plan Corp., 100 F.3d 818, 827 (10th Cir. 1996); Woo, 144 F.2d at 1161. In applying the "sliding scale" standard of review, "the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." Woo, 144 F.3d at 1162; see Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 233 (4th Cir.1997). UNUM's failure to seek an outside medical evaluation or to address the diagnoses of Morgan's treating physicians combined with a financial conflict of interest is severe enough that this Court will "require that the record contain substantial evidence bordering on a preponderance" in order to support UNUM's denial of benefits. Woo, 144 F.3d at 1162.

*Denial of Benefits*

The Plan defines "disability" as follows: "You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury." (Bates Stamp UACL 01113).

Further, the Plan defines "material and substantial duties" as duties that: "- are normally required for the performance of your regular occupation; and - cannot be reasonably omitted or modified." (Bates Stamp UACL 01096).

UNUM contends that there is sufficient evidence to support a denial of Morgan's disability claim. In particular, it addresses the following:

1. Video Surveillance and Physical Exercise

UNUM based its denial of Morgan's claim largely on the video surveillance it conducted of Morgan's daily routine. In its Memorandum of Law, UNUM states that it observed Morgan sitting outside for approximately two hours in a lawn chair, reading papers and books, speaking on the phone while sorting papers, twisting and bending at a fitness center, and having a two-hour lunch with friends. Further, UNUM's surveillance observed Morgan using a walking machine, stair stepper and stationary bike, doing stomach crunches and using equipment in the free weight area. From this video surveillance, UNUM's on-site physician determined that these activities were incompatible with a fibromyalgia diagnosis. However, UNUM offers no evidence that Dr. Feagin had any experience dealing with fibromyalgia nor was his opinion based on a critical evaluation of Morgan's medical records or an independent examination of Morgan's condition. In addition, Dr. Feagin's opinion ignores the fact that Morgan's treating physicians recommended an exercise regime as a necessary part of Morgan's treatment. Dr. Yue reported that he strongly recommends exercise and stretching for all of his fibromyalgia patients (Bates Stamp UACL 00602) and Dr. Tiede said of Morgan: "one of my recommendations to treat his fibromyalgia has been a regular exercise program and clearly do not see his ability to do exercise as contradicting his diagnosis of

fibromyalgia." (Bates Stamp UACL 00600). Finally, UNUM's experts failed to address the relationship between Morgan's observed physical conduct and his ability to perform the material and substantial duties of his highly cognitive profession.

2. Self-Reporting and Lack of Objective Evidence

UNUM also asserts that UNUM's condition is "self-reported." In particular, UNUM argues that Morgan's fibromyalgia diagnosis relies on the "trigger-point" test which is a "subjective" test depending on a patient's confirmation of pain "either real or imagined." (Def.'s Mem. Supp. Summ. J. at 20). However, the courts and the medical community have recognized fibromyalgia as an objectively diagnosable condition. Russell v. UNUM Life Ins. Co. of Amer., 40 F.Supp.2d 747, 750 (D.S.C. 1999). "Recognizing the ability to detect and diagnose the condition, several courts have awarded disability benefits under ERISA for fibromyalgia." Id. at 751; Lang v. Long-Term Disability plan of Sponsor Applied Remote Tech, Inc. 125 F.3d 794, 799 (9th Cir. 1997); Godfrey v. Bell South Telecommunications, Inc. 89 F.3d 755, 758-60 (11th Cir. 1996) ("Fibromyalgia can be severely disabling and can only be diagnosed by an examination of the patient."). In the same vein, UNUM's argument that there is no "objective" evidence supporting Morgan's claim is irrelevant given the Plan never mentions "objective" medical determinations as a prerequisite to receiving benefits under the Plan. The Eighth Circuit has held that a reviewing insurance company cannot artificially add this standard of "objective medical evidence" to its plan if it is not expressly included therein. See House v. The Paul Revere Life Ins. Co., 241 F.3d at 1048.

4. Neuropsychological Reports:

UNUM relies heavily on what it views as the contrasting opinions of its on-site neuropsychologist, Dr. Higgins, and Morgan's neuropsychologist, Dr. Misukanis. Dr. Misukanis' examination revealed that Morgan had a cognitive disability. However, Defendant rejected this evidence in favor of Dr. Higgins' admitted incomplete review of Morgan's condition which he based on Dr. Misukanis' report rather than his own examination of Plaintiff. Dr. Higgins' opinion not only does not support UNUM's denial of benefits, but also does not contradict the opinions of either Dr. Misukanis or Morgan's treating physicians. Dr. Higgins admits that Morgan has cognitive difficulties as exhibited by low scores in working memory and processing speed and states that "it may indeed be appropriate to consider him to be limited in performing the material and substantial duties of his highly demanding occupation." (Bates Stamp UACL 01074). His main argument is that the evidence does not indicate that Morgan's problems are "organically based in a neurocognitive deficit" Id.: a claim Plaintiff has never asserted.

**CONCLUSION**

Having reviewed the evidence presented to UNUM under a less deferential abuse of discretion standard, this Court finds the record insufficient to support UNUM's denial of Morgan's disability claim.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 8) is **GRANTED**.

2. Plaintiff's Motion for prejudgment interest, attorneys' fees and costs is **GRANTED**. Counsel shall submit an affidavit and supporting documents as to the attorneys' fees and costs within 30 days from the date of this order.

3. Defendant's Motion for Summary Judgment (Clerk Doc. No. 15) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: Sept 16, 2002.

Michael J. Davis
Michael J. Davis
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd